UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| TORTILLERIA EL MAIZAL, INC., et al., | : Jointly Administered Under |
| | : Case No. 13-59899-crm |
| Debtors | : |
| | : |
| _____: | |

**EMERGENCY MOTION OF DEBTORS FOR (1) ORDER
AUTHORIZING USE OF CASH COLLATERAL ON AN EMERGENCY BASIS
TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR
(2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE**

COME NOW Tortilleria El Maizal, Inc. ("TEM"), El Maizal of the South, Incorporated ("Maizal"), and National Provision Company ("NPC"), debtors and debtors in possession in the above-styled chapter 11 cases[1], (collectively, the "Debtors"), by and through the undersigned counsel, and hereby file this Motion (the "Motion") for the entry and approval of an order, pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtors' use of cash collateral on an emergency basis to operate their business in accordance with the proposed budget (the "Budget") attached hereto as Exhibit "A" and the proposed Interim Order (as defined below) attached as Exhibit "B." In support hereof, the Debtors show as follows:

CONCISE STATEMENT OF RELIEF SOUGHT

**Relief Sought:** Authority to use cash collateral on an interim basis and, pending a final hearing, final authority to use cash collateral

**Entity with Interest
In Cash Collateral:** SunTrust Bank (the "Bank")

---

[1] The Debtors have requested joint administration of their cases. In contemplation of joint administration, the Debtors are filing all first day motions (other than the joint administration motion) in the main case styled above.

| | |
|---|---|
| **Purposes for the Use of Cash Collateral:** | Payment of operational expenses and administrative expenses in accordance with the Budget attached as Exhibit "A" |
| **Duration:** | Through the date the Court holds a hearing on final approval (See, Paragraph 14 of the Motion; Paragraph 2 of the Proposed Order) |
| **Adequate Protection:** | A lien on all personal property of all Debtors, wherever located and whether created, acquired or arising prior to or after the Petition Date, including, without limitation, all accounts, accounts receivable, inventory, equipment, general intangibles, documents, instruments, chattel paper, deposit accounts and investment property, together with all proceeds of the foregoing items, but excluding any equipment subject to prior perfected and valid security interests in favor of parties other than the Bank (the "Collateral") (Paragraph 18 of the Motion; Paragraph 9 of the Proposed Order). |
| | Periodic monthly payments to the Bank (i) on Note 1 (as defined below) in the amount of $12,250, (ii) on Note 2 (as defined below) in the amount of $6,400, and (iii) rent in the amount of $13,500 per month relating to the Indiana Facility (as defined below) and $12,500 per month relating to the Georgia Facility (as defined below), said rent to be paid directly to the Bank and to be booked as a rent payment from Debtors to Reyes Properties, LLP. (Paragraph 19 of the Motion; Paragraph 10 of the Proposed Order). |
| **Additional Provisions:** | (1) Debtors stipulate as to the validity of the debt and the granting of the liens (Paragraphs B, C, and D of the Proposed Order) |
| | (2) Weekly reporting requirements of receipts and disbursements (Paragraph 8 of the Proposed Order) |
| | (3) Establishment of Events of Default including (i) the conversion or dismissal of any of these Chapter 11 Cases; (ii) the appointment of a trustee or an examiner with expanded powers in any of these Chapter 11 Cases; (iii) any Debtor's failure to maintain adequate insurance to the extent as existed on the Petition Date; (iv) any Debtor's failure duly and punctually to perform any of its obligations under this Order; (v) the Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of the Bank; (vi) Debtors fail to pay the monthly payments required as set forth in Paragraph 10 of the Proposed Order; (vii) the |

>  **Court enters an order granting to any person or entity other than the Bank relief from the automatic stay to foreclose upon any lien or security interest with respect to any of the Pre-Petition Collateral; or (viii) without the prior written consent of the Bank, the entry of an order authorizing any Debtor to use any Cash Collateral on terms other than as set forth in this Order or to obtain any financing under Section 364(d) of the Bankruptcy Code secured by a priming lien or lien of equal priority with the Adequate Protection Liens or the Bank's liens upon any of the Pre-Petition Collateral. (Paragraph 13 of the Proposed Order)**
>
>  **(4)  No consent to Section 506(c) surcharge (Paragraph 16 of the Proposed Order)**
>
>  **(5) June 30, 2013, is set as the claim investigation deadline by which creditors may dispute or challenge the amount, priority or validity of the Bank's debt and liens (Paragraph 17 of the Proposed Order)**

### Introduction

1. On May 5, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. No creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicate for the relief requested herein is § 105(a) of the Bankruptcy Code.

### Background

5. TEM manufactures tortilla products (white corn tortillas, yellow corn tortillas, tortilla chips, flour tortillas, low carb tortillas, flavor wraps, and similar products) and supplies them to restaurants. Its corporate headquarters are located at 1920 Shiloh Road, Building 4, Suite 100, Kennesaw, GA 30144 (the "Headquarters").

6. TEM's manufacturing facility and primary distribution center is located at 1092 Marietta Industrial Boulevard, Marietta, GA 30062 (the "Georgia Facility"). The Facility was opened in 1990 and serviced over 900 customers in 10 states. In order to address its rapid growth and increasing distribution, TEM opened another distribution center at 3900 Highway 70 Business West in Clayton, North Carolina 27620 (the "Carolina Facility") in 1991. In 1995, TEM opened another distribution center at 4501 Hitch-Peters Rd., Evansville, Indiana 47711 (the "Indiana Facility").

7. Maizal (formerly El Maizal of Alabama, Inc.) was formed in 2001 and currently operates a distribution center located at 400 Country Place Parkway, Suite A, Pearl, Mississippi 39208 (the "Mississippi Facility").

8. TEM and Maizal distribute product to over 3,000 customers weekly in 23 states.

9. NPC is a merchant wholesaler of fresh meat and meat products that shares the Headquarters with TEM and distributes out of the Georgia Facility.

10. The Georgia Facility and the Indiana Facility are owned by a related non-debtor entity, Reyes Properties, LLP ("Properties"). The Headquarters, Carolina Facility, and Mississippi Facility are leased from third parties.

11. The Debtors primary secured creditor is SunTrust Bank (the "Bank"), which asserts a first priority security interest in substantially all assets of the Debtors, except certain

-4-

-5-

financed equipment (the "Collateral"). The Debtors are indebted to the Bank pursuant to the following:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $2,500,000 executed by the Debtors in favor of the Bank ("Note 1");

- That certain Agreement to Commercial Note dated March 19, 2012 executed by the Debtors in favor of the Bank;

- That certain Commercial Note dated December 31, 2010 in the principal amount of $676,151.14 executed by TEM in favor of the Bank ("Note 2");

- That certain Agreement to Note dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by NPC in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by Maizal in favor of the Bank; and

- That certain Unconditional Guaranty dated December 31, 2010 executed by Maizal in favor of the Bank.

12. Properties and the Debtors are also indebted to the Bank pursuant to the following:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $3,600,000 executed by Properties in favor of the Bank;

- That certain Agreement to Commercial Note dated March 19, 2012 executed by Properties in favor of the Bank;

- That certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated March 19, executed by Properties in favor of the Bank, recorded March 21, 2012 in Vanderburgh County, Indiana, as Instrument Number 2012R00006970, securing the Indiana Facility;

- That certain Unconditional Guaranty dated March 19, 2012 executed by Maizal in favor of the Bank;

- That certain Unconditional Guaranty dated March 19, 2012 executed by TEM in favor of the Bank;

- That certain Unconditional Guaranty dated March 19, 2012 executed by NPC in favor of the Bank;

- That certain Commercial Note dated March 19, 2012 in the principal amount of $1,944,000 executed by Properties in favor of the Bank;

- That certain Commercial Deed to Secure Debt and Security Agreement dated March 19, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1436-1446, Cobb County, Georgia records, securing the Georgia Facility; and

- That certain Assignment of Rents, Profits and Leases dated March 21, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1446-1451, Cobb County, Georgia records.

13. Additionally, Debtors are indebted to the Bank for charges incurred by TEM pursuant to a Visa® Commercial Card Agreement. The Debtor's total indebtedness to the Bank is approximately $8,787,777.

**Relief Requested**

**Use of Cash Collateral on an Interim Basis in Accordance with the Budget**

14. By this Motion, the Debtors seek interim authorization to use cash collateral in accordance with the Budget pending a final hearing (hereinafter, the period for which interim authority is sought is referred to as the "Interim Period"). The Debtors propose to use cash collateral for general and administrative expenses as set forth in the Budget. The expenses incurred by the Debtors and for which cash collateral will be used will all be incurred in the normal and ordinary course of the Debtors' businesses. A proposed "Interim Order Authorizing Limited Use of Cash Collateral by Debtors in Possession and Providing Adequate Protection to Citizens Business Credit" (the "Proposed Order") is attached hereto as Exhibit "B."[2]

15. Bankruptcy Code Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the

---

[2] The Proposed Order is still subject to final approval of the Lender.

-6-

Court approves the use, conditioned on provision of adequate protection. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 15 days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

16. The Debtors request authority to use cash collateral for the purpose of avoiding immediate and irreparable harm to the estates. The authority to continue using cash collateral should continue until the Court rules on the Debtors' request following a final hearing.

17. The Debtors recognize that the Bank is entitled to adequate protection of its secured interest in the Collateral and the cash collateral within the meaning of 11 U.S.C. §§ 361 and 363. The Debtors acknowledge that, in consideration of the Debtors' use of the Bank's Collateral and cash collateral, the Bank is entitled to adequate protection of its security interest in and lien on the Collateral and cash collateral.

18. The Debtors have agreed to provide such adequate protection pursuant to the terms hereof in the form of a post-petition replacement lien, as follows: In connection with the Debtors' use of cash collateral during the Interim Period and to provide the Bank adequate protection in respect of the Debtors' use of such cash collateral as well as for any decrease in the value of its interests in the Collateral during the Interim Period, the Debtors agree, subject to approval of this Court, to grant the Bank *nunc pro tunc* as of the commencement of the Chapter 11 case, a first priority lien pursuant to 11 U.S.C. §361(2) on and in all of the Debtors' property

(excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank) to the same extent and priority and of the same kind and nature as the Collateral and cash collateral.

19. As additional adequate protection, the Debtors propose to pay $12,250 per month on Note 1 and $6,400 per month on Note 2. Additionally, Debtors shall pay rent to Properties in the amount of $13,500 per month relating to the Indiana Facility and $12,500 per month relating to the Georgia Facility, said rent to be paid directly from Debtors to the Bank and to be booked as a rent from Debtors to Properties.

20. The use of cash collateral shall be used strictly in accordance with the terms of the Budget.

21. Notwithstanding anything herein to the contrary, the Debtors propose that the liens and administrative claims granted to the Bank hereunder in connection with the use of Collateral and cash collateral be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930. The security interests and liens granted to the Bank in connection with the use of the cash collateral will be valid and perfected without the need for the execution or filing of any further documents or instruments.

### Final Authority for Use of Cash Collateral

22. The Debtors further request that the Court schedule a final hearing on cash collateral use and, following such hearing, enter a final order authorizing cash collateral use. At such hearing, the Court will consider any additional adequate protection requested by the Bank or agreed upon by the Debtors.

### Basis for Relief

### The Court Should Approve the Motion Because the Lender has been Provided Adequate Protection

23. The Debtors have agreed to provide adequate protection as contemplated by Section 363(c)(2) of the Bankruptcy Code and hereby seek the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

24. Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

25. The Debtors' requested use of cash collateral as set forth in the Budget and the protections proposed to be afforded to the Bank in the Proposed Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Bank's Collateral.

**The Use of Cash Collateral Will Preserve the Debtors' Assets and Going Concern Value**

26.  The continuation of the Debtors' operations will preserve their going-concern value. If the Debtors are not allowed to use cash collateral, their businesses will likely shut down. Additionally, the Debtors have inventory at numerous locations and have receivables that need collection. The Debtors require the use of cash collateral in order to protect and preserve the value of such inventory and to facilitate the collection of receivables.

27.  It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

28.  As discussed above, the Debtors will use cash collateral during the Interim Period in the ordinary course of their businesses. If the Debtors cannot continue to use cash collateral during the Interim Period, they likely will be forced to cease operations and convert their cases to Chapter 7. This cessation would irreparably damage the value of the Debtors' assets. In contrast, granting authority will allow the Debtors to maintain operations and preserve the going concern value.

**The Lender is Adequately Protected by the Grant of
Replacement Liens and Periodic Payments**

29.  The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection". 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn.

1984).  The Debtors will adequately protect the Bank's interests in cash collateral by providing liens on the Debtors' personal property (including post-petition personal property, but excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank) to the extent the Debtors' use of cash collateral results in a postpetition decrease in the value securing the Bank's claims.

30. The Bankruptcy Court also expressly provides that periodic cash payments constitute adequate protection. 11 U.S.C. § 361(1). The payments are intended to protect the affected entity against a decrease in the value of its collateral, which would directly affect the entity's interest in the collateral. *See, Traveler Ins. Co. v. American AgCredit Corp.* (*In re Blehm Land & Cattle Co.*), 859 F.2d 137 (10th Cir. 1988). Here, the Debtor's proposed monthly payments on Note 1 and Note 2, as well as payments totaling $25,500 directly to the Bank on the Indiana Facility and the Georgia Facility to be booked as rent to Properties.

31. The Debtors believe that use of cash collateral (a) during the Interim Period in order to avoid irreparable harm pursuant to the terms and conditions set forth above, and (b) on a final basis following a final hearing on cash collateral use, is fair and reasonable and adequately protects the Bank. The combination of (i) the Debtors' ability to preserve the going concern value and the preservation of assets with the use of cash collateral, (ii) the post-petition liens granted to the Bank, and (iii) the monthly payments to the Bank, adequately protects the Bank's secured position under Section 361.  For all of the reasons stated above, approval of the Motion is proper.

**REMAINDER OF PAGE LEFT BLANK**

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (A) authorizing the Debtors (i) to use the Collateral and cash collateral pursuant to the terms set forth above and in accordance with the Budget during the Interim Period, (ii) to grant the liens set forth above in connection with the use of the Collateral and cash collateral and (iii) make the payments contemplated hereunder, and (B) setting a final hearing hereon at least fifteen (15) days after the entry of an interim order on this Motion, and (C) for such other and further relief as the Court deems just and proper.

Dated: May 6, 2013

        Respectfully submitted,

        LAMBERTH, CIFELLI, STOKES
        ELLIS & NASON, P.A.
        Attorneys for Debtors


By: */s/ G. Frank Nason, IV*
     G. Frank Nason, IV
     Georgia Bar No. 535160

3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373

**Tortilleria El Maizal, El Maizal of the South & National Provision Company**
**4 WEEK CASH FLOW**

|    |                                                          | Week 1<br>6-May | Week 2<br>13-May | Week 3<br>20-May | Week 4<br>27-May |
|----|----------------------------------------------------------|-----------------|------------------|------------------|------------------|
| 1. | **FUNDS AT BEGINNING OF PERIOD**                         | $20,000.00      | $166,800.00      | $138,350.00      | $40,800.00       |
| 2. | **RECEIPTS:**                                            |                 |                  |                  |                  |
|    | A.   Cash Sales                                          | 0.00            | 0.00             | 0.00             | 0.00             |
|    |     Minus: Cash Refunds              | 0.00            | 0.00             | 0.00             | 0.00             |
|    |     Net Cash Sales                   | 0.00            | 0.00             | 0.00             | 0.00             |
|    | B.   Accounts Receivable & Credit Sales                  | 960,000.00      | 950,000.00       | 930,000.00       | 940,000.00       |
|    | D.   Other Receipts (Attach List)                        | 0.00            | 0.00             | 0.00             | 0.00             |
| 3. | **TOTAL RECEIPTS**                                       | 960,000.00      | 950,000.00       | 930,000.00       | 940,000.00       |
| 4. | **TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | 980,000.00    | 1,116,800.00     | 1,068,350.00     | 980,800.00       |
| 5. | **DISBURSEMENTS**                                        |                 |                  |                  |                  |
|    | A.   Advertising                                         | 0.00            | 0.00             | 0.00             | 0.00             |
|    | B.   Bank Charges                                        | 0.00            | 0.00             | 0.00             | 0.00             |
|    | C.   Contract Labor                                      | 0.00            | 0.00             | 0.00             | 0.00             |
|    | D.   Fixed Asset Payments                                | 0.00            | 0.00             | 0.00             | 0.00             |
|    | E.   Insurance                                           | 0.00            | 0.00             | 6,000.00         | 0.00             |
|    | F.   Inventory Payments                                  | 550,000.00      | 585,000.00       | 570,000.00       | 570,000.00       |
|    | G.   Leases                                              | 0.00            | 0.00             | 0.00             | 0.00             |
|    | H.   Manufacturing Supplies                              | 0.00            | 3,000.00         | 3,000.00         | 3,000.00         |
|    | I.   Office Supplies                                     | 0.00            | 350.00           | 350.00           | 350.00           |
|    | J.   Payroll - Net                                       | 150,000.00      | 160,000.00       | 166,000.00       | 160,000.00       |
|    | K.   Professional Fees (Acocunting & Legal)              | 0.00            | 0.00             | 0.00             | 0.00             |
|    | L.   Rent                                                | 0.00            | 25,500.00        | 0.00             | 0.00             |
|    | M.   Repairs & Maintenance                               | 0.00            | 11,000.00        | 11,000.00        | 11,000.00        |
|    | N.   Secured Creditor Payments                           | 0.00            | 6,400.00         | 0.00             | 12,250.00        |
|    | O.   Taxes Paid - Payroll                                | 43,000.00       | 46,000.00        | 48,000.00        | 46,000.00        |
|    | P.   Taxes Paid - Sales & Use                            | 0.00            | 0.00             | 0.00             | 0.00             |
|    | Q.   Taxes Paid - Other                                  | 0.00            | 0.00             | 0.00             | 0.00             |
|    | R.   Telephone                                           | 0.00            | 0.00             | 7,000.00         | 0.00             |
|    | S.   Travel & Entertainment                              | 0.00            | 6,000.00         | 6,000.00         | 6,000.00         |
|    | T.   U.S. Trustee Quarterly Fees                         | 0.00            | 0.00             | 0.00             | 0.00             |
|    | U.   Utilities                                           | 0.00            | 0.00             | 75,000.00        | 0.00             |
|    | V.   Vehicle Expenses                                    | 70,000.00       | 135,000.00       | 135,000.00       | 135,000.00       |
|    | W.   Other Operating Expenses                            | 200.00          | 200.00           | 200.00           | 200.00           |
| 6. | **TOTAL DISBURSEMENTS (Sum of 5A thru W)**               | 813,200.00      | 978,450.00       | 1,027,550.00     | 943,800.00       |
| 7. | **ENDING BALANCE (Line 4 Minus Line 6)**                 | $166,800.00     | $138,350.00      | $40,800.00       | $37,000.00       |

## **CERTIFICATE OF SERVICE**

This is to certify that I, G. Frank Nason, IV, have this date served a true and correct copy of the foregoing EMERGENCY MOTION OF DEBTORS FOR (1) ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN EMERGENCY BASIS TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR (2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE by facsimile or electronic mail, as indicated, to the parties listed below. An additional Certificate of Service will be submitted setting forth additional service parties.

Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
(Fax:  404/331-4464)

David W. Cranshaw
Morris, Manning & Martin, LLP
3343 Peachtree Road NE
Suite 1600
Atlanta, GA 30326
dwc@mmmlaw.com

This 6th day of May, 2013

*/s/ G. Frank Nason, IV*
G. Frank Nason, IV