UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| TORTILLERIA EL MAIZAL, INC., et al., | : | Jointly Administered Under |
| | : | Case No. 13-59899-crm |
| Debtors | : | |
| | : | |
| _____ | : | |

## AMENDED EMERGENCY MOTION OF DEBTORS FOR (1) ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN EMERGENCY BASIS TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR (2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE

COME NOW Tortilleria El Maizal, Inc. ("TEM"), El Maizal of the South, Incorporated ("Maizal"), and National Provision Company ("NPC"), debtors and debtors in possession in the above-styled chapter 11 cases[1], (collectively, the "Debtors"), by and through the undersigned counsel, and hereby file this Motion (the "Motion") for the entry and approval of an order, pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtors' use of cash collateral on an emergency basis to operate their business in accordance with the proposed budget (the "Budget") attached hereto as Exhibit "A" and the proposed Interim Order (as defined below) attached as Exhibit "B." In support hereof, the Debtors show as follows:

### CONCISE STATEMENT OF RELIEF SOUGHT

**Relief Sought:**          **Authority to use cash collateral on an interim basis and, pending a final hearing, final authority to use cash collateral**

**Entity with Interest**          **SunTrust Bank (the "Bank")**
**In Cash Collateral:**

---

[1] The Debtors have requested joint administration of their cases. In contemplation of joint administration, the Debtors are filing all first day motions (other than the joint administration motion) in the main case styled above.

| | |
|---|---|
| **Purposes for the Use of Cash Collateral:** | **Payment of operational expenses and administrative expenses in accordance with the Budget attached as Exhibit "A"** |
| **Duration:** | **Through the date the Court holds a hearing on final approval (See, Paragraph 14 of the Motion; Paragraph 2 of the Proposed Order)** |
| **Adequate Protection:** | **A lien on all personal property of all Debtors, wherever located and whether created, acquired or arising prior to or after the Petition Date, including, without limitation, all accounts, accounts receivable, inventory, equipment, general intangibles, documents, instruments, chattel paper, deposit accounts and investment property, together with all proceeds of the foregoing items, but excluding any equipment subject to prior perfected and valid security interests in favor of parties other than the Bank (the "Collateral") (Paragraph 18 of the Motion; Paragraph 9 of the Proposed Order).** |
| | **Periodic monthly payments to the Bank (i) on Note 1 (as defined below) in the amount of $12,250, (ii) on Note 2 (as defined below) in the amount of $6,400, and (iii) rent in the amount of $13,500 per month relating to the Indiana Facility (as defined below) and $12,500 per month relating to the Georgia Facility (as defined below), said rent to be paid directly to the Bank and to be booked as a rent payment from Debtors to Reyes Properties, LLP. (Paragraph 19 of the Motion; Paragraph 10 of the Proposed Order).** |
| **Additional Provisions:** | **(1) Debtors stipulate as to the validity of the debt and the granting of the liens (Paragraphs B, C, and D of the Proposed Order)** |
| | **(2) Weekly reporting requirements of receipts and disbursements (Paragraph 8 of the Proposed Order)** |
| | **(3) Establishment of Events of Default including (i) the conversion or dismissal of any of these Chapter 11 Cases; (ii) the appointment of a trustee or an examiner with expanded powers in any of these Chapter 11 Cases; (iii) any Debtor's failure to maintain adequate insurance to the extent as existed on the Petition Date; (iv) any Debtor's failure duly and punctually to perform any of its obligations under this Order; (v) the Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of the Bank; (vi) Debtors fail to pay the monthly payments required as set forth in Paragraph 10 of the Proposed Order; (vii) the** |

2

**Court enters an order granting to any person or entity other than the Bank relief from the automatic stay to foreclose upon any lien or security interest with respect to any of the Pre-Petition Collateral; or (viii) without the prior written consent of the Bank, the entry of an order authorizing any Debtor to use any Cash Collateral on terms other than as set forth in this Order or to obtain any financing under Section 364(d) of the Bankruptcy Code secured by a priming lien or lien of equal priority with the Adequate Protection Liens or the Bank's liens upon any of the Pre-Petition Collateral. (Paragraph 13 of the Proposed Order)**

**(4)  No consent to Section 506(c) surcharge (Paragraph 16 of the Proposed Order)**

**(5) June 30, 2013, is set as the claim investigation deadline by which creditors may dispute or challenge the amount, priority or validity of the Bank's debt and liens (Paragraph 17 of the Proposed Order)**

## Introduction

1.      On May 5, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      No creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicate for the relief requested herein is § 105(a) of the Bankruptcy Code.

**Background**

5.      TEM manufactures tortilla products (white corn tortillas, yellow corn tortillas, tortilla chips, flour tortillas, low carb tortillas, flavor wraps, and similar products) and supplies them to restaurants.  Its corporate headquarters are located at 1920 Shiloh Road, Building 4, Suite 100, Kennesaw, GA 30144 (the "Headquarters").

6.      TEM's manufacturing facility and primary distribution center is located at 1092 Marietta Industrial Boulevard, Marietta, GA 30062 (the "Georgia Facility"). The Facility was opened in 1990 and serviced over 900 customers in 10 states. In order to address its rapid growth and increasing distribution, TEM opened another distribution center at 3900 Highway 70 Business West in Clayton, North Carolina 27620 (the "Carolina Facility") in 1991. In 1995, TEM opened another distribution center at 4501 Hitch-Peters Rd., Evansville, Indiana 47711 (the "Indiana Facility").

7.      Maizal (formerly El Maizal of Alabama, Inc.) was formed in 2001 and currently operates a distribution center located at 400 Country Place Parkway, Suite A, Pearl, Mississippi 39208 (the "Mississippi Facility").

8.      TEM and Maizal distribute product to over 3,000 customers weekly in 23 states.

9.      NPC is a merchant wholesaler of fresh meat and meat products that shares the Headquarters with TEM and distributes out of the Georgia Facility.

10.      The Georgia Facility and the Indiana Facility are owned by a related non-debtor entity, Reyes Properties, LLP ("Properties"). The Headquarters, Carolina Facility, and Mississippi Facility are leased from third parties.

11.      The Debtors primary secured creditor is SunTrust Bank (the "Bank"), which asserts a first priority security interest in substantially all assets of the Debtors, except certain

financed equipment (the "Collateral"). The Debtors are indebted to the Bank pursuant to the following:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $2,500,000 executed by the Debtors in favor of the Bank ("Note 1");

- That certain Agreement to Commercial Note dated March 19, 2012 executed by the Debtors in favor of the Bank;

- That certain Commercial Note dated December 31, 2010 in the principal amount of $676,151.14 executed by TEM in favor of the Bank ("Note 2");

- That certain Agreement to Note dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by NPC in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by Maizal in favor of the Bank; and

- That certain Unconditional Guaranty dated December 31, 2010 executed by Maizal in favor of the Bank.

12.    Properties and the Debtors are also indebted to the Bank pursuant to the following:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $3,600,000 executed by Properties in favor of the Bank;

- That certain Agreement to Commercial Note dated March 19, 2012 executed by Properties in favor of the Bank;

- That certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated March 19, executed by Properties in favor of the Bank, recorded March 21, 2012 in Vanderburgh County, Indiana, as Instrument Number 2012R00006970, securing the Indiana Facility;

- That certain Unconditional Guaranty dated March 19, 2012 executed by Maizal in favor of the Bank;

- That certain Unconditional Guaranty dated March 19, 2012 executed by TEM in favor of the Bank;

5

- That certain Unconditional Guaranty dated March 19, 2012 executed by NPC in favor of the Bank;

- That certain Commercial Note dated March 19, 2012 in the principal amount of $1,944,000 executed by Properties in favor of the Bank;

- That certain Commercial Deed to Secure Debt and Security Agreement dated March 19, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1436-1446, Cobb County, Georgia records, securing the Georgia Facility; and

- That certain Assignment of Rents, Profits and Leases dated March 21, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1446-1451, Cobb County, Georgia records.

13.     Additionally, Debtors are indebted to the Bank for charges incurred by TEM pursuant to a Visa® Commercial Card Agreement. The Debtor's total indebtedness to the Bank is approximately $8,787,777.

**Relief Requested**

**Use of Cash Collateral on an Interim Basis in Accordance with the Budget**

14.     By this Motion, the Debtors seek interim authorization to use cash collateral in accordance with the Budget pending a final hearing (hereinafter, the period for which interim authority is sought is referred to as the "Interim Period"). The Debtors propose to use cash collateral for general and administrative expenses as set forth in the Budget. The expenses incurred by the Debtors and for which cash collateral will be used will all be incurred in the normal and ordinary course of the Debtors' businesses. A proposed "Interim Order Authorizing Limited Use of Cash Collateral by Debtors in Possession and Providing Adequate Protection to Citizens Business Credit" (the "Proposed Order") is attached hereto as Exhibit "B."[2]

15.     Bankruptcy Code Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the

---

[2] The Proposed Order is still subject to final approval of the Lender.

Court approves the use, conditioned on provision of adequate protection. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral earlier than 15 days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

16.    The Debtors request authority to use cash collateral for the purpose of avoiding immediate and irreparable harm to the estates. The authority to continue using cash collateral should continue until the Court rules on the Debtors' request following a final hearing.

17.    The Debtors recognize that the Bank is entitled to adequate protection of its secured interest in the Collateral and the cash collateral within the meaning of 11 U.S.C. §§ 361 and 363.  The Debtors acknowledge that, in consideration of the Debtors' use of the Bank's Collateral and cash collateral, the Bank is entitled to adequate protection of its security interest in and lien on the Collateral and cash collateral.

18.    The Debtors have agreed to provide such adequate protection pursuant to the terms hereof in the form of a post-petition replacement lien, as follows:  In connection with the Debtors' use of cash collateral during the Interim Period and to provide the Bank adequate protection in respect of the Debtors' use of such cash collateral as well as for any decrease in the value of its interests in the Collateral during the Interim Period, the Debtors agree, subject to approval of this Court, to grant the Bank *nunc pro tunc* as of the commencement of the Chapter 11 case, a first priority lien pursuant to 11 U.S.C. §361(2) on and in all of the Debtors' property

(excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank) to the same extent and priority and of the same kind and nature as the Collateral and cash collateral.

19.     As additional adequate protection, the Debtors propose to pay $12,250 per month on Note 1 and $6,400 per month on Note 2. Additionally, Debtors shall pay rent to Properties in the amount of $13,500 per month relating to the Indiana Facility and $12,500 per month relating to the Georgia Facility, said rent to be paid directly from Debtors to the Bank and to be booked as a rent from Debtors to Properties.

20.     The use of cash collateral shall be used strictly in accordance with the terms of the Budget.

21.     Notwithstanding anything herein to the contrary, the Debtors propose that the liens and administrative claims granted to the Bank hereunder in connection with the use of Collateral and cash collateral be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930. The security interests and liens granted to the Bank in connection with the use of the cash collateral will be valid and perfected without the need for the execution or filing of any further documents or instruments.

### Final Authority for Use of Cash Collateral

22.     The Debtors further request that the Court schedule a final hearing on cash collateral use and, following such hearing, enter a final order authorizing cash collateral use. At such hearing, the Court will consider any additional adequate protection requested by the Bank or agreed upon by the Debtors.

**Basis for Relief**

**The Court Should Approve the Motion Because
the Lender has been Provided Adequate Protection**

23.     The Debtors have agreed to provide adequate protection as contemplated by Section 363(c)(2) of the Bankruptcy Code and hereby seek the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

24.     Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy").  Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982).  The focus of the requirement is to protect a secured creditor from diminution in value during the use period.  *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

25.     The Debtors' requested use of cash collateral as set forth in the Budget and the protections proposed to be afforded to the Bank in the Proposed Order, in light of the

circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Bank's Collateral.

### The Use of Cash Collateral Will Preserve the Debtors' Assets and Going Concern Value

26.    The continuation of the Debtors' operations will preserve their going-concern value. If the Debtors are not allowed to use cash collateral, their businesses will likely shut down. Additionally, the Debtors have inventory at numerous locations and have receivables that need collection. The Debtors require the use of cash collateral in order to protect and preserve the value of such inventory and to facilitate the collection of receivables.

27.    It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

28.    As discussed above, the Debtors will use cash collateral during the Interim Period in the ordinary course of their businesses.  If the Debtors cannot continue to use cash collateral during the Interim Period, they likely will be forced to cease operations and convert their cases to Chapter 7. This cessation would irreparably damage the value of the Debtors' assets. In contrast, granting authority will allow the Debtors to maintain operations and preserve the going concern value.

### The Lender is Adequately Protected by the Grant of
### Replacement Liens and Periodic Payments

29.    The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection".  11 U.S.C. § 361(2).  Granting replacement liens provides ample

adequate protection of the secured creditor's interest in cash collateral.  *See e.g. In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).  The Debtors will adequately protect the Bank's interests in cash collateral by providing liens on the Debtors' personal property (including post-petition personal property, but excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank) to the extent the Debtors' use of cash collateral results in a postpetition decrease in the value securing the Bank's claims.

30.    The Bankruptcy Court also expressly provides that periodic cash payments constitute adequate protection. 11 U.S.C. § 361(1). The payments are intended to protect the affected entity against a decrease in the value of its collateral, which would directly affect the entity's interest in the collateral. *See, Traveler Ins. Co. v. American AgCredit Corp.* (*In re Blehm Land & Cattle Co.*), 859 F.2d 137 (10th Cir. 1988). Here, the Debtor's proposed monthly payments on Note 1 and Note 2, as well as payments totaling $25,500 directly to the Bank on the Indiana Facility and the Georgia Facility to be booked as rent to Properties.

**31.**    The Debtors believe that use of cash collateral (a) during the Interim Period in order to avoid irreparable harm pursuant to the terms and conditions set forth above, and (b) on a final basis following a final hearing on cash collateral use, is fair and reasonable and adequately protects the Bank. The combination of (i) the Debtors' ability to preserve the going concern value and the preservation of assets with the use of cash collateral, (ii) the post-petition liens granted to the Bank, and (iii) the monthly payments to the Bank, adequately protects the Bank's secured position under Section 361.  For all of the reasons stated above, approval of the Motion is proper.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (A) authorizing the Debtors (i) to use the Collateral and cash collateral pursuant to the terms set forth above and in accordance with the Budget during the Interim Period, (ii) to grant the liens set forth above in connection with the use of the Collateral and cash collateral and (iii) make the payments contemplated hereunder, and (B) setting a final hearing hereon at least fifteen (15) days after the entry of an interim order on this Motion, and (C) for such other and further relief as the Court deems just and proper.

Dated: May 6, 2013

Respectfully submitted,

LAMBERTH, CIFELLI, STOKES
 ELLIS & NASON, P.A.
Attorneys for Debtors


By:  */s/ G. Frank Nason, IV*
        G. Frank Nason, IV
        Georgia Bar No. 535160

3343 Peachtree Road NE, Suite 550
Atlanta, GA 30326-1022
(404) 262-7373

**EXHIBIT "A" FOLLOWS**

**Tortilleria El Maizal, El Maizal of the South & National Provision Company**
**4 WEEK CASH FLOW**

| | | Week 1<br>6-May | Week 2<br>13-May | Week 3<br>20-May | Week 4<br>27-May |
|---|---|---|---|---|---|
| 1. | **FUNDS AT BEGINNING OF PERIOD** | $20,000.00 | $166,800.00 | $138,350.00 | $40,800.00 |
| 2. | **RECEIPTS:** | | | | |
| A. | Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| | Minus: Cash Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
| | Net Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| B. | Accounts Receivable & Credit Sales | 960,000.00 | 950,000.00 | 930,000.00 | 940,000.00 |
| D. | Other Receipts (Attach List) | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. | **TOTAL RECEIPTS** | 960,000.00 | 950,000.00 | 930,000.00 | 940,000.00 |
| 4. | **TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | 980,000.00 | 1,116,800.00 | 1,068,350.00 | 980,800.00 |
| | | | | | |
| 5. | **DISBURSEMENTS** | | | | |
| A. | Advertising | 0.00 | 0.00 | 0.00 | 0.00 |
| B. | Bank Charges | 0.00 | 0.00 | 0.00 | 0.00 |
| C. | Contract Labor | 0.00 | 0.00 | 0.00 | 0.00 |
| D. | Fixed Asset Payments | 0.00 | 0.00 | 0.00 | 0.00 |
| E. | Insurance | 0.00 | 0.00 | 6,000.00 | 0.00 |
| F. | Inventory Payments | 550,000.00 | 585,000.00 | 570,000.00 | 570,000.00 |
| G. | Leases | | | | |
| H. | Manufacturing Supplies | 0.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| I. | Office Supplies | 0.00 | 350.00 | 350.00 | 350.00 |
| J. | Payroll - Net | 150,000.00 | 160,000.00 | 166,000.00 | 160,000.00 |
| K. | Professional Fees (Acocunting & Legal) | 0.00 | 0.00 | 0.00 | 0.00 |
| L. | Rent | 0.00 | 25,500.00 | 0.00 | 0.00 |
| M. | Repairs & Maintenance | 0.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| N. | Secured Creditor Payments | 0.00 | 6,400.00 | 0.00 | 12,250.00 |
| O. | Taxes Paid - Payroll | 43,000.00 | 46,000.00 | 48,000.00 | 46,000.00 |
| P. | Taxes Paid - Sales & Use | 0.00 | 0.00 | 0.00 | 0.00 |
| Q. | Taxes Paid - Other | 0.00 | 0.00 | 0.00 | 0.00 |
| R. | Telephone | 0.00 | 0.00 | 7,000.00 | 0.00 |
| S. | Travel & Entertainment | 0.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| T. | U.S. Trustee Quarterly Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| U. | Utilities | 0.00 | 0.00 | 75,000.00 | 0.00 |
| V. | Vehicle Expenses | 70,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| W. | Other Operating Expenses | 200.00 | 200.00 | 200.00 | 200.00 |
| 6. | **TOTAL DISBURSEMENTS (Sum of 5A thru W)** | 813,200.00 | 978,450.00 | 1,027,550.00 | 943,800.00 |
| 7. | **ENDING BALANCE (Line 4 Minus Line 6)** | $166,800.00 | $138,350.00 | $40,800.00 | $37,000.00 |

**EXHIBIT "B" FOLLOWS**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| TORTILLERIA EL MAIZAL, INC., et al., | : | Jointly Administered Under |
| | : | Case No. 13-59899-crm |
| Debtors | : | |
| | : | |
| _____ | : | |

**INTERIM ORDER AUTHORIZING LIMITED USE
OF CASH COLLATERAL BY DEBTORS IN POSSESSION AND PROVIDING
ADEQUATE PROTECTION TO SUNTRUST BANK**

This matter came on for a hearing before the Court on May 8, 2013 (the "Preliminary Hearing"), on the "Emergency Motion of Debtors for (1) Order Authorizing Use of Cash Collateral on an Emergency Basis to Avoid Immediate and Irreparable Harm, and (2) Final Order Authorizing Cash Collateral Use" filed by Tortilleria El Maizal, Inc., debtor and debtor in possession ("TEM") and the affiliated debtors, El Maizal of the South, incorporated ("Maizal") and National Provision Company ("NPC") (with TEM, each Debtor identified is referred to as a "Debtor," and collectively, as the "Debtors"), pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) (the "Cash Collateral Motion") to use certain cash that is subject to security interests and liens in favor of SunTrust Bank (the "Bank"), and therefore constitutes cash collateral within the meaning of Section 363 of the Bankruptcy Code.

Having considered the matters set forth in the Cash Collateral Motion, all representations of counsel at the Interim Hearing, and the agreement of the parties to the provisions hereof, the Court makes the following findings of fact and conclusions of law applicable to the use of cash collateral by Debtors and the adequate protection sought by the Bank (to the extent any findings of fact constitutes conclusion of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS:

A.       On May 5, 2013 (the "Petition Date"), Debtors filed with this Court their respective petitions for relief under Chapter 11 of the Bankruptcy Code commencing these chapter 11 cases (the "Chapter 11 Cases"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtors have retained possession of their assets and are authorized to continue the operation and management of their businesses as debtors in possession.

B.       Debtors have stipulated that, as of the Petition Date, Debtors were indebted to the Bank pursuant to:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $2,500,000 executed by the Debtors in favor of the Bank ("Note 1") (balance as of May 5, 2013 - $2,489,123.03);

- That certain Agreement to Commercial Note dated March 19, 2012 executed by the Debtors in favor of the Bank;

- That certain Commercial Note dated December 31, 2010 in the principal amount of $676,151.14 executed by TEM in favor of the Bank ("Note 2") (balance as of May 5, 2013 - $360,761.77)[1];

- That certain Agreement to Note dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by TEM in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by NPC in favor of the Bank;

- That certain Security Agreement dated December 31, 2010 executed by Maizal in favor of the Bank;

- That certain Unconditional Guaranty dated December 31, 2010 executed by Maizal in favor of the Bank;

---

[1] There is also a swap liability associated with Note 2.

- That certain Unconditional Guaranty dated December 31, 2010 executed by NPC in favor of the Bank.

C.      Additionally, Debtors have stipulated that they and the non-debtor affiliated company Reyes Properties, LLP ("Properties"), are indebted to the Bank pursuant to:

- That certain Commercial Note dated March 19, 2012 in the principal amount of $3,600,000 executed by Properties in favor of the Bank (balance as of May 5, 2013 - $3,521,833.69)[2];

- That certain Agreement to Commercial Note dated March 19, 2012 executed by Properties in favor of the Bank;

- That certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated March 19, executed by Properties in favor of the Bank, recorded March 21, 2012 in Vanderburgh County, Indiana, as Instrument Number 2012R00006970, securing certain property located in Evansville, Vanderburgh County, Indiana ("Indiana Property");

- That certain Unconditional Guaranty dated March 19, 2012 executed by Maizal in favor of the Bank;

- That certain Unconditional Guaranty dated March 19, 2012 executed by TEM in favor of the Bank;

- That certain Unconditional Guaranty dated March 19, 2012 executed by NPC in favor of the Bank;

- That certain Commercial Note dated March 19, 2012 in the principal amount of $1,944,000 executed by Properties in favor of the Bank (balance as of May 5, 2013 - $1,899,206.41)[3];

- That certain Commercial Deed to Secure Debt and Security Agreement dated March 19, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1436-1446, Cobb County, Georgia records, securing certain real property located in Marietta, Cobb County, Georgia (the "Georgia Property"); and

- That certain Assignment of Rents, Profits and Leases dated March 21, 2012 executed by Properties in favor of the Bank, recorded March 21, 2012 in Book 14929, Pages 1446-1451, Cobb County, Georgia records.

D.      Additionally, Debtors are indebted to the Bank for charges incurred by TEM

---

[2] There is also a swap liability associated with this Note.

[3] There is also a swap liability associated with this Note.

pursuant to a Visa® Commercial Card Agreement (the "Purchasing Card") (balance as of May 5, 2013 - $514,909.98). As of the Petition Date, Debtors stipulate that the total indebtedness owed the Bank (exclusive of statutory attorney's fees and any swap liability) pursuant to the herein referenced loan documents and the Purchasing Card (the "Pre-Petition Loan Documents") is $9,145,834.88 (the "Pre-Petition Debt").

E.      As security for the payment of all Pre-Petition Debt, each Debtor stipulates that it granted to the Bank security interests in and liens upon all or substantially all of such Debtor's personal property, including, without limitation, all of such Debtor's accounts, goods, inventory, equipment, instruments, chattel paper, documents, general intangibles, deposit accounts, investment property, letter-of-credit rights and supporting obligations, and books and records, but excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank (all such personal property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "Pre-Petition Collateral"). Each debtor has stipulated that the security interests and liens granted by it to the Bank pursuant to the Pre-Petition Loan Documents are legal, valid, enforceable, duly perfected and first priority security interests in and liens upon the Pre-Petition Collateral.

F.      An immediate and ongoing need exists for Debtors to use cash collateral to continue the operations of their businesses as a debtors-in-possession under Chapter 11 of the Bankruptcy Code and to preserve the value of Debtors' assets as a "going concern." Debtors propose to use cash collateral during the Cash Collateral Period (as defined below) in the amounts and for the purposes specified in the budget prepared by Debtors and annexed hereto as Exhibit A (as the same may be amended from time to time with the Bank's prior written consent, the "Budget").

G.      Debtors' counsel has certified that a copy of the Cash Collateral Motion, together with notice of the Interim Hearing, has been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the United States Trustee, the Bank, the creditors listed on the list filed with the Court pursuant to Bankruptcy Rule 1007(d) and all creditors known to claim any liens upon any of the Cash Collateral. The Court finds that notice of the Cash Collateral Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

H.      Good cause has been shown for the entry of this Order and authorization for Debtors to use cash collateral pending the final hearing on the Cash Collateral Motion pursuant to Bankruptcy Rule 4001(b) (the "Final Hearing"). Debtors' need for the use of cash collateral is immediate and critical, and entry of this Order will minimize disruption of Debtors' business and serve to preserve the assets of Debtors' estate and is in the best interest of Debtors, their creditors and their respective estates.

I.      Debtors stipulate that the Bank is entitled to adequate protection of its interests in the Pre-Petition Collateral.

J.      Based on the record presented at the Interim Hearing, it appears that the terms associated with the Bank's consent to the Debtors' use of cash collateral, as embodied in this Order, are fair and reasonable and have been negotiated by the parties in good faith.

K.      This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Cash Collateral Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Disposition of Motion</u>.  The Cash Collateral Motion is hereby GRANTED as hereinafter set forth.

2.      <u>Limited Cash Collateral Use Authorized</u>.  During the Cash Collateral Period (as defined below), Debtors shall be authorized to use Cash Collateral (as defined below) only for Permitted Purposes (as defined below).  As used herein:

(a)      the term "Cash Collateral Period" shall mean the period commencing May 8, 2013, and ending on the sooner to occur of (a) _____ \_\_.m. (prevailing Eastern time) on _____, 2013 (or such later date as the Bank may agree in its sole discretion), or (b) the occurrence of an Event of Default (as defined in paragraph 14 below);

(b)      the term "Cash Collateral" shall mean and include (i) proceeds of Pre-Petition Collateral consisting of pre-petition accounts receivable arising from Debtors' sale prior to the Petition Date of inventory in the ordinary course of business or of post-petition accounts receivable arising from Debtors' sale after the Petition Date of pre-petition inventory in the ordinary course of business, (ii) proceeds derived from the post-petition sale in the ordinary course of business of inventory acquired by Debtors after the Petition Date, and (iii) all proceeds derived from the post-petition sale of any other Collateral whether in the ordinary course of business or outside the ordinary course of business, subject to the Court's approval after notice and a hearing; and

(c)      the term "Permitted Purposes" shall mean use by any Debtor of Cash Collateral to pay expenses shown on the Budget and limited to amounts and line items shown on the Budget, <u>provided</u> that the aggregate amount of Cash Collateral used as of any date during the Cash Collateral period may not exceed the aggregate amount of weekly expenses shown on the Budget multiplied by the number of weeks elapsed from the commencement of the Cash Collateral Period through such date by more than ten percent (10%) without written approval of the Bank and <u>provided</u> <u>further</u> that no Cash Collateral may be used to pay any pre-petition claim against any Debtor (other than payroll, payroll related taxes, employee

benefits, and critical vendors, if any, approved by the Court after notice and hearing).

3.  <u>Collection of Accounts Receivable</u>.  Each Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and all other rights to the payment of money and shall cause all such collections (including all Cash Collateral) to be remitted by its customers and other account obligors.

4.  <u>Limitation on Providing Inventory to Affiliated Non-Debtor Entities</u>.  Debtors shall not provide or deliver inventory or product to any non-Debtor entities or restaurants owned or operated by any principals of Debtors, family members, or any affiliated entities of such principals except on a cash-on-delivery basis and at the same price as such inventory or product is sold to non-affiliated entities.

5.  <u>Cash Collateral Subject to the Bank's Liens</u>.  Until expended by Debtors, all Cash Collateral shall remain subject to the liens and claims of the Bank under the Pre-Petition Loan Documents and this Order.

6.  <u>Control of Bank Accounts</u>. The Bank's consent to the use of Cash Collateral is conditioned upon the Debtors' retention of GGG Partners, LLC ("GGG") to provide financial consulting and advisory services, and the requirement that GGG (i) preserve all cash receipts received by the Debtors, (ii) open and maintain such accounts as are necessary for the Debtors' compliance with the Bankruptcy Code and the Guidelines of the Office of the U.S. Trustee, (iii) institute appropriate controls to ensure that all disbursement are authorized by the Bankruptcy Code and any cash collateral orders entered in the Chapter 11 Cases, including acting as a signatory on the accounts, and (iv) have exclusive control of the bank accounts to ensure compliance with the duties and responsibilities of the Debtors as debtors in possession.

7.  <u>Termination of Authority to Use Cash Collateral</u>.  After the expiration of the Cash Collateral Period, Debtors shall forthwith cease to use any Cash Collateral except to the extent otherwise allowed by order of the Court after notice and a hearing.  In no event shall the Bank be obligated to monitor or otherwise be responsible for Debtors' use of Cash Collateral in conformity with this Order or Debtors' compliance with this Order.  In the event of any material discrepancies between the amounts projected in the Budget for collections, sales or expense items and the actual amounts collected, sold or spent by the Debtors for the same period, the Bank may seek emergency relief from this Court to prevent the further use of Cash Collateral by Debtors hereunder, or such other relief as the Bank may deem appropriate.

8.  <u>No Authorization for Sales outside the Ordinary Course of Business</u>.  Nothing in this Order shall be deemed to authorize any Debtor to sell or otherwise dispose of any of its pre-petition or post-petition assets other than sales of inventory in the ordinary course of business or to use any cash or other proceeds of any assets of any Debtor except the use of Cash Collateral strictly in conformity with the terms and conditions of this Order.

9.     Reporting.  Debtors shall provide to the Bank a report not later than 4:00 o'clock p.m. (prevailing Eastern Time) on Thursday of each week showing a reconciliation and report of the source of Cash Collateral collected during the immediately preceding week and the disbursements of all Cash Collateral. Upon reasonable notice, one or more representatives of the Bank shall be authorized to visit and remain on the business premises of Debtors at any time or times that Debtors are transacting business to inspect or appraise any assets of Debtors, to audit, inspect or make copies of any of the books and records (including, without limitation, check registers) of Debtors and to obtain supporting details for any of the information provided by Debtors to the Bank hereunder, but such representative shall not interfere with Debtors' business operations.  For purposes of this paragraph, all information, reports, documents and notices to be provided by Debtors to the Bank shall be delivered via electronic mail, facsimile transmission or overnight courier of national repute to Jeffrey Stanfield, Mail Code GA – Atlanta -1986, Post Office Box 4418, Atlanta, GA 30302, facsimile number: (404) 214-8237, email: Jeffrey.Stanfield@SunTrust.com; with a copy to David W. Cranshaw, Morris, Manning & Martin, LLP, 3343 Peachtree Road NE, Suite 1600, Atlanta, GA 30326, facsimile: (404) 365-9532, email: dwc@mmmlaw.com.

10.     Adequate Protection Liens Granted to the Bank. As partial adequate protection of its interests, the Bank is hereby granted liens ("Adequate Protection Liens") upon all personal property of all Debtors, wherever located and whether created, acquired or arising prior to or after the Petition Date, including, without limitation, all accounts, accounts receivable, inventory, equipment, general intangibles, documents, instruments, chattel paper, deposit accounts and investment property, together with all proceeds of the foregoing items, but excluding any equipment subject to perfected and valid security interests in favor of a party other than the Bank. The Adequate Protection Liens are granted as adequate protection against any diminution in the value of any liens and security interests of the Bank in any property of Debtors (including, without limitation, the Pre-Petition Collateral) resulting from the imposition of the automatic stay or any use, sale, consumption or other disposition of such property (whether pursuant to this or any other order of the Court or the Bankruptcy Code).  The Adequate Protection Liens shall be deemed automatically valid and perfected upon entry of this Order without the necessity of the execution by any Debtor or the filing or recording of any account control agreement, financing statement, mortgage, assignment, trust deed or other notice or document of any kind and shall be subordinate in priority only to valid, duly perfected and unavoidable liens on the Petition Date that encumber property of any Debtor in existence on the Petition Date as security for lawful claims against such Debtor.  The Adequate Protection Liens shall not extend to the proceeds of any avoidance actions received by Debtors or the estate pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code ("Avoidance Actions"). Notwithstanding anything herein to the contrary, the liens granted to the Bank hereunder in connection with the use of Collateral and cash collateral shall be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930.

11.     Monthly Payments. As set forth in the Budget, Debtors shall pay to the Bank as adequate protection $6,400 per month on Note 1 and $12,250 per month on Note 2. Additionally, as set forth in the Budget Debtors shall pay rent to Properties in the amount of $13,500 per

month relating to the Indiana Property and $12,500 per month relating to the Georgia Property, said rent to be paid directly from Debtors to the Bank and to be booked as a rent payment from Debtors to Properties.

12.    <u>Superpriority Claim</u>.  The Bank shall be entitled to an administrative priority claim under Section 507(b) of the Bankruptcy Code in the amount, if any, by which the protections afforded herein for Debtors' use or disposition of any of its property (including Cash Collateral) that is subject to the Bank's liens prove to be inadequate.

13.    <u>Reservation of Rights</u>. Nothing contained in this Order shall be deemed to constitute a finding with respect to the adequacy of the protection of the interests of the Bank in the Pre-Petition Collateral or a waiver by the Bank of its right to seek other or additional relief from the Court, including, without limitation, the right to seek additional protection, to move for relief from the automatic stay, to seek a dismissal or conversion of this Chapter 11 case or to seek the appointment of a trustee or examiner.

14.    <u>Events of Default</u>.  The occurrence or existence of any one or more of the following events or conditions shall constitute an "Event of Default": (i) the conversion or dismissal of any of these Chapter 11 Cases; (ii) the appointment of a trustee or an examiner with expanded powers in any of these Chapter 11 Cases; (iii) any Debtor's failure to maintain adequate insurance to the extent as existed on the Petition Date; (iv) any Debtor's failure duly and punctually to perform any of its obligations under this Order; (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of the Bank; (vi) Debtors fail to pay the monthly payments required as set forth in paragraph 10 above; (vii) the Court shall enter an order granting to any person or entity other than the Bank relief from the automatic stay to foreclose upon any lien or security interest with respect to any of the Pre-Petition Collateral; (viii) Debtors fail to comply with the provisions of this Order relating to GGG's exclusive control over the bank accounts; or (ix) without the prior written consent of the Bank, the entry of an order authorizing any Debtor to use any Cash Collateral on terms other than as set forth in this Order or to obtain any financing under Section 364(d) of the Bankruptcy Code secured by a priming lien or lien of equal priority with the Adequate Protection Liens or the Bank's liens upon any of the Pre-Petition Collateral.

15.    <u>Remedies upon Event of Default</u>.  Upon the occurrence of an Event of Default, the Bank or the Bank's counsel may file under this Court's CM/ECF filing system an affidavit of default specifying such Event of Default. If Debtors dispute that an Event of Default has in fact occurred, Debtors may file a contravening affidavit within 5 calendar days of the date of filing of the affidavit of default. If no such contravening affidavit is timely filed, the Debtors shall forthwith cease any further use of Cash Collateral and the Court may enter an order prohibiting further use of Cash Collateral (but Debtors shall be prohibited from further use whether or not such an order is entered). If Debtors timely file a contravening affidavit, the Court shall set an expedited hearing, <u>provided</u> that the only issue at such hearing that may be raised by the Debtors shall be whether, in fact, an Event of Default has occurred and is continuing.

16.     Other Obligations of Debtors Under Loan Documents Remain in Effect.  Debtors are authorized and directed to comply with all provisions contained in any of the Pre-Petition Loan Documents relating to the maintenance and continuation in effect of any insurance policies, whether property, casualty, liability, credit or otherwise, provided that Debtors shall only be authorized to pay insurance premiums during the Cash Collateral Period in such amounts and at such times as are necessary to prevent imminent lapse or cancellation of a policy or policies.

17.     No Consent to Surcharge.  Neither this Order nor the Bank's consent to the Budget or the use of Cash Collateral as herein provided shall constitute a consent provided by the Bank to any surcharge under Section 506(c) of the Bankruptcy Code.

18.     Claim Investigation Deadline.  The stipulations of the Debtors, and the findings and rulings set forth in this order with respect to the amount, priority and validity of the Bank's pre-petition claim, security interests, and liens are without prejudice to any committee or creditor to object to the amount, priority, or validity of the Bank's security interest or administrative claim, provided that any such objections must be in writing and filed with this Court no later than June 30, 2013, or such objections shall be forever waived and barred. Debtors have acknowledged, stipulated and agreed that the Pre-Petition Debt and all liens and security interests of the Bank in the Pre-Petition Collateral are legal, valid, binding, enforceable, perfected and non-avoidable, and that the Pre-Petition Debt is allowable as a claim against each Debtor and that the Pre-Petition Debt is not subject to offset, counterclaim, recoupment, or equitable subordination. In consideration of the Bank's agreement to allow the use of Cash Collateral hereunder, Debtors have waived and shall be barred (a) from challenging the amount, validity, extent, perfection or priority of or seeking to set aside, avoid, offset or subordinate any of the Pre-Petition Debt or any liens or security interests of the Bank in the Pre-Petition Collateral and (b) from asserting against the Bank a claim under any lender liability theories or pursuant to Sections 105, 510, 544, 547, 548, 549 or 550 of the Bankruptcy Code. Notwithstanding the foregoing, the validity, extent, enforceability and perfection of the liens and security interests of the Bank in the Pre-Petition Collateral shall be subject only to the rights of any interested party (other than Debtors) having standing to do so to commence an appropriate adversary proceeding or contested matter objecting to the validity or amount of the Pre-Petition Debt or the extent, validity, perfection or non-avoidability of the pre-petition liens and security interests of the Bank in the Pre-Petition Collateral or seeking disgorgement of all or part of the payment of the Pre-Petition Debt, which adversary proceeding or contested matter must be filed no later than June 30, 2013.  If such adversary proceeding or contested matter is not timely filed, the liens and security interests of the Bank in the Pre-Petition Collateral shall be deemed legal, valid, binding, enforceable, perfected and unavoidable and all of the Pre-Petition Debt shall be conclusive and binding upon all parties in interest in these cases and in any superseding Chapter 7 cases, including any subsequently appointed trustee, as a legal, valid, binding, enforceable claim that is not subject to offset, counterclaim, equitable subordination or other defense or claim.

19.     Survival of Provisions of This Order.  The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order that may be entered

dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

       20.   <u>Notice of Final Hearing</u>.  Promptly after the entry of this Order, within the time specified by local rules, Debtors shall serve a copy of this Order to the U.S. Trustee, the Bank, the twenty (20) largest unsecured creditors for each Debtor, any creditors who have heretofore filed a request with the Court for notices, and each secured creditor and shall file a certificate of service regarding same with the clerk of the Court.  The Final Hearing shall be held at _____ **__.m., on _____, 2013**, at Courtroom ____, United States Bankruptcy Court, _____, _____, Georgia.  If at or after the Final Hearing the Court modifies any of the provisions of this Order, then such modifications shall not affect the rights and remedies granted to the Bank pursuant to this Order, all of which rights and remedies shall remain in full force and effect with respect to Cash Collateral used by the Debtors prior to the effective date of such modifications.

**END OF DOCUMENT**

**Preparer's Signature on Next Page**

**Prepared and Presented by:**

LAMBERTH, CIFELLI, STOKES,
ELLIS & NASON, P.A.
Attorneys for Debtors

<u>*/s/ G. Frank Nason, IV*</u>
   G. Frank Nason, IV (Georgia Bar No. 535160)
East Tower Suite 550
3343 Peachtree Rd., N. E.
Atlanta, GA 30326-1022
(404) 262-7373

**Exhibit A**

**(Budget)**

**Tortilleria El Maizal, El Maizal of the South & National Provision Company**
**4 WEEK CASH FLOW**

|  |  | Week 1<br>6-May | Week 2<br>13-May | Week 3<br>20-May | Week 4<br>27-May |
|---|---|---|---|---|---|
| 1. | **FUNDS AT BEGINNING OF PERIOD** | $20,000.00 | $166,800.00 | $138,350.00 | $40,800.00 |
| 2. | **RECEIPTS:** |  |  |  |  |
| A. | Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
|  | Minus: Cash Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
|  | Net Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| B. | Accounts Receivable & Credit Sales | 960,000.00 | 950,000.00 | 930,000.00 | 940,000.00 |
| D. | Other Receipts (Attach List) | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. | **TOTAL RECEIPTS** | 960,000.00 | 950,000.00 | 930,000.00 | 940,000.00 |
| 4. | **TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | 980,000.00 | 1,116,800.00 | 1,068,350.00 | 980,800.00 |
| 5. | **DISBURSEMENTS** |  |  |  |  |
| A. | Advertising | 0.00 | 0.00 | 0.00 | 0.00 |
| B. | Bank Charges | 0.00 | 0.00 | 0.00 | 0.00 |
| C. | Contract Labor | 0.00 | 0.00 | 0.00 | 0.00 |
| D. | Fixed Asset Payments | 0.00 | 0.00 | 0.00 | 0.00 |
| E. | Insurance | 0.00 | 0.00 | 6,000.00 | 0.00 |
| F. | Inventory Payments | 550,000.00 | 585,000.00 | 570,000.00 | 570,000.00 |
| G. | Leases | 0.00 | 0.00 | 0.00 | 0.00 |
| H. | Manufacturing Supplies | 0.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| I. | Office Supplies | 0.00 | 350.00 | 350.00 | 350.00 |
| J. | Payroll - Net | 150,000.00 | 160,000.00 | 166,000.00 | 160,000.00 |
| K. | Professional Fees (Acocunting & Legal) | 0.00 | 0.00 | 0.00 | 0.00 |
| L. | Rent | 0.00 | 25,500.00 | 0.00 | 0.00 |
| M. | Repairs & Maintenance | 0.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| N. | Secured Creditor Payments | 0.00 | 6,400.00 | 0.00 | 12,250.00 |
| O. | Taxes Paid - Payroll | 43,000.00 | 46,000.00 | 48,000.00 | 46,000.00 |
| P. | Taxes Paid - Sales & Use | 0.00 | 0.00 | 0.00 | 0.00 |
| Q. | Taxes Paid - Other | 0.00 | 0.00 | 0.00 | 0.00 |
| R. | Telephone | 0.00 | 0.00 | 7,000.00 | 0.00 |
| S. | Travel & Entertainment | 0.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| T. | U.S. Trustee Quarterly Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| U. | Utilities | 0.00 | 0.00 | 75,000.00 | 0.00 |
| V. | Vehicle Expenses | 70,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| W. | Other Operating Expenses | 200.00 | 200.00 | 200.00 | 200.00 |
| 6. | **TOTAL DISBURSEMENTS (Sum of 5A thru W)** | 813,200.00 | 978,450.00 | 1,027,550.00 | 943,800.00 |
| 7. | **ENDING BALANCE (Line 4 Minus Line 6)** | $166,800.00 | $138,350.00 | $40,800.00 | $37,000.00 |

**CERTIFICATE OF SERVICE**

This is to certify that I, G. Frank Nason, IV, have this date served a true and correct copy of the foregoing AMENDED EMERGENCY MOTION OF DEBTORS FOR (1) ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN EMERGENCY BASIS TO AVOID IMMEDIATE AND IRREPARABLE HARM, AND FOR (2) FINAL ORDER AUTHORIZING CASH COLLATERAL USE by electronic mail to the parties listed below. An additional Certificate of Service will be submitted setting forth additional service parties.

Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
vivieon.e.kelley@usdoj.gov

David W. Cranshaw
Morris, Manning & Martin, LLP
3343 Peachtree Road NE
Suite 1600
Atlanta, GA 30326
dwc@mmmlaw.com

This 6th day of May, 2013

*/s/ G. Frank Nason, IV*
G. Frank Nason, IV