GSCCCA eFile#: EF 000315456 000030366 038 Received:Tuesday, August 28, 2012 6:43:29 PM Page 1 of 1

FILED & RECORDED
Wednesday, August 29, 2012 8:16:00 AM
File Number: 038-2012-006030
Cindy G. Brown
Coweta County Clerk of Superior Court

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Corporation Service Company 1-800-858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

69032053 - 359420

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia Coweta

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: TORTILLERIA EL MAIZAL, INC. | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 1c. MAILING ADDRESS: 1920 SHILOH RD. | CITY: KENNESAW | STATE: GA | POSTAL CODE: 30144 | | COUNTRY: USA |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION: Corp. | 1f. JURISDICTION OF ORGANIZATION: GA | 1g. ORGANIZATIONAL ID #, if any | | [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | | [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: NISSAN MOTOR ACCEPTANCE CORPORATION | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 3c. MAILING ADDRESS: 8900 FREEPORT PARKWAY | CITY: IRVING | STATE: TX | POSTAL CODE: 75063 | | COUNTRY: USA |

4. This FINANCING STATEMENT covers the following collateral:

NISSAN FORKLIFT TX40 3W CUSHION AC ser# G1N1-724601, BBI 18-85-21 ser# J2285, Ferro HPS18-665B1 ser# BC71600011; together with all present and future attachments, accessories, exchanges, replacement parts, repairs and additions thereto and all chattel paper, documents, general intangibles, instruments, accounts, contract rights, leases and rentals now existing or hereinafter arising therefrom and all cash and non cash proceeds of any of the foregoing.

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA 5863371 4676

69032053

**NISSAN MOTOR ACCEPTANCE CORPORATION** Equipment Lease Agreement #: 5863371

| LESSEE LEGAL NAME: Tortilleria El Maizal, Inc. | |
|---|---|
| LESSEE ADDRESS: 1920 Shiloh Rd., Kennesaw, GA 30144 | PHONE: (770) 615-3801 |
| EQUIPMENT LOCATION: 1920 Shiloh Rd. Kennesaw, GA 30144 | PAYMENT DATE. |

| Description | New/Used | Serial Number(s) | Rental Amount |
|---|---|---|---|
| NISSAN FORKLIFT TX40 3W CUSHION AC<br>....BATTERY: --<br>....CHARGER: -- | N | GIN1-724601<br>J2285<br>BC716700011 | $525.00 |

| Lease Term in Months: 65 | Payment Frequency: MONTHLY | End of Lease Purchase Options: $1 BUYOUT | Total Payment Amt: $525.00 |
|---|---|---|---|

You agree to pay $ 0.00 at the time You sign this Lease, as advance rent. If more than one Lease payment is due in advance, the additional Lease payment(s) will be applied to the end of the Lease term.

## TERMS AND CONDITIONS

1. Lease. You ("Lessee") agree to lease from Us ("Lessor") the equipment listed above and on any attached schedule, including all replacement parts, additions, attachments and accessories ("Equipment"). By signing below, You acknowledge that You have accepted the Equipment and it is satisfactory. This Lease starts on the acceptance date indicated below ("Acceptance Date"). Payments are payable in advance and are due on the above Payment Date and on the same date of each consecutive remittance period thereafter at Lessor's address listed on the invoice. You shall pay per diem payments when billed by Us for the period from Acceptance Date to the Payment Date. You authorize Us to adjust the Lease payments by up to 15% if the cost of the Equipment or taxes differ from the initial estimate. Your Lease obligations are absolute and unconditional and not subject to cancellation, reduction, setoff or counterclaim. When a payment is not made within 10 days of its due date, You agree to pay Us a late charge of 5% of the payment. You agree to reimburse official fees, financing statement filing fees and Our other out-of-pocket expenses.

2. Equipment Use, Maintenance and Warranties. We are leasing the Equipment to You "AS IS" AND MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. We transfer to You any manufacturer warranties. You are required at Your own cost to keep the Equipment repaired and maintained in good working order and as required by the manufacturer's warranty. You agree that We are not responsible for the maintenance or service, regardless of whether or not Lease payments include the cost of maintenance or service provided by a third party. You agree that any maintenance or service claims will not affect Your obligation to pay all Lease payments when due. You acknowledge that We are not the manufacturer's or supplier's agent and the manufacturer and supplier are not Our agents. The Equipment cannot be moved from the location above. We have the right to inspect the Equipment. You will not subject the Equipment to any abrasive, corrosive or abnormal working conditions or to any environmentally hazardous substance (under any applicable federal, state or local law, rule or regulation).

3. Assignment. You agree not to transfer, sell, sublease, assign, pledge, relocate, move or encumber the Equipment or any rights under this Lease. We may sell, assign or transfer this Lease and the new owner will have the same rights and benefits of Us and will not have to perform any of Our obligations, and the rights of the new owner will not be subject to any claims, defenses or setoffs that You may have against Us or any supplier.

4. Risk of Loss and Insurance. We are not responsible for any losses, injuries or claims caused by or relating in any manner to the Equipment and You will reimburse Us and defend Us against any such claims, which obligations will survive Lease termination. You bear all risk of Equipment loss or damage and if any such loss or damage occurs, You must still satisfy all of Your Lease obligations. You will obtain and maintain commercial general liability insurance naming Us as an additional insured with coverages and amounts acceptable to Us (minimum limit $1,000,000). You will keep the Equipment insured against all risks of loss or damage for an amount equal to its replacement cost. You will list Us as the loss payee and provide written proof of insurance. If You fail to provide proof of insurance We may obtain such insurance at Your expense and You agree to reimburse Us for any insurance premiums and related costs. All insurance shall be with carriers acceptable to Us. You grant Us an irrevocable power of attorney to make claims for and receive and endorse all checks and other documents received as payment for such insurance policies.

5. Taxes. You agree to pay when due, either directly or as reimbursement to Us, all taxes (including without limitation sales, use and personal property) and charges in connection with ownership and use of the Equipment. We may charge You a processing fee for administering property tax filings. You will indemnify Us on an after-tax basis on demand against the loss or unavailability of any lessor anticipated Equipment ownership tax benefits caused by Your acts or omissions.

6. Return and Purchase Option. If You have been granted a purchase option in the End of Lease Options above, upon at least 60, but not more than 120 days written notice to Us prior to the expiration of the Lease term (or any renewal), You will advise Us of Your intention to either return or purchase the Equipment, whereupon You may: (a) return the Equipment to any location designated by Us, freight and insurance prepaid, in as good condition as when it was delivered to You, ordinary wear and tear resulting from proper use only excepted (if We reasonably believe that the Equipment is not in the condition required above, We may bill you the normal charge for repairs to the Equipment to achieve such condition regardless of whether the actual repairs are performed and You will reimburse Us for all of Our reasonable expenses to do so within 30 days) or (b) provided You are not in default hereunder, purchase all but not less than all of the Equipment on the terms indicated in the End of Lease Option indicated above. Any FMV purchase option will be determined by Us based on the Equipment's in place retail value. All purchase options are "AS IS", WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED and You shall also pay applicable taxes and assessments. If You do not have a purchase option, You shall return the Equipment by the expiration of the Lease term in the manner described in subsection (a) above. If You do not purchase or return the Equipment by the expiration of the Lease term, in each case as provided herein, this Lease shall renew at the same Lease payment for consecutive 30 day periods (on a pro rata basis if the rental payment frequency is other than monthly). Notwithstanding the foregoing, We shall have the right to obtain immediate possession of the Equipment at any time after the end of the term and any renewals.

7. Default and Remedies. You are in default of the Lease if: (a) You fail to pay any Lease payment or any other sum when due or breach any other obligation under this Lease; (b) You or Your affiliates breach any obligation under any other agreement with Us or any representation relating to this Lease is false; or (c) You or any partner or guarantor dies, becomes insolvent, bankrupt, merges or is sold. Upon any default, We may do one or more of the following: (i) declare the entire balance of the unpaid Lease payments for the full term immediately due and payable, (ii) sue You for and receive all Lease payments and any other payments then accrued or accelerated under this Lease or any other agreement plus Our estimated fair market value of the Equipment at the end of the originally scheduled Lease term; (iii) charge You interest on all monies due at the highest rate permitted by law; (iv) for each check that is returned, charge You a return-check or non-sufficient funds charge of the lesser of $20.00 or the maximum amount allowed by law; and (v) require that You immediately return the Equipment to Us or We may peaceably repossess it. Such return or repossession will not constitute a termination of this Lease. If the Equipment is returned or repossessed, We may sell or re-rent it at any terms We determine, at one or more public or private sales, with or without notice to You and apply the net proceeds after deducting the related costs and expenses, to Your obligations under this Lease and any other agreements between You and Us, with You remaining liable for any deficiency. You are also required to pay all expenses incurred in connection with enforcement of any remedies and reasonable attorney's fees. These remedies are not exclusive. You agree that We do not have to give You notice of presentment or notice that We are demanding or intend to demand immediate payment of all that You owe.

8. Miscellaneous. This Lease shall be governed by the laws of Texas. Both parties waive trial by jury. Unless You have a one dollar purchase option, We own the Equipment. You have the right to use the Equipment for the full Lease term provided You comply with the terms of this Lease. If You have a one dollar purchase option and/or this Lease is deemed to be a security agreement, You grant Us a security interest in the Equipment and proceeds and authorize Us to file financing statements and any interest accruing at a rate in excess of the maximum lawful rate shall be immediately and automatically applied to principal and the interest rate shall be deemed to be reduced immediately to the maximum lawful rate. You agree that this Lease is a Finance Lease as defined in Article 2A of the Uniform Commercial Code ("UCC"), that You have selected both the Equipment and the vendor, and that We are entitled to all benefits, privileges and protections of a lessor under a Finance Lease. To the extent permitted by law, You waive any and all rights and remedies granted to You under Article 2A of the UCC. You agree that the Equipment will be used for business purposes and not for personal, family or household use. You represent that any Equipment Surveys are true, correct and complete and that You will abide by their terms. You agree that We are authorized to supply missing information and correct obvious errors in this Lease. We will not be liable to You for indirect, special or consequential damages. You agree that a facsimile copy of this Lease with facsimile signatures may be treated as an original and will be admissible as evidence of this Lease.

9. Arbitration Clause. Any claim or dispute between You and Us or Our employees, agents, successors or assigns, shall, at Your or Our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right You may have to arbitrate a class action. You may choose any arbitration organization and its applicable rules subject to Our approval. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law. The arbitration hearing shall be conducted in the federal district in which You are located. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.). You and We retain any rights to self-help remedies, such as repossession, and the right to seek remedies in small claims court. Neither You nor We waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

| LESSEE SIGNATURE | | ACCEPTANCE | | LESSOR | |
|---|---|---|---|---|---|
| You agree to all the Terms and Conditions contained in this Lease, and in any attachments hereto (all of which are included by reference) and become a part of this Lease. [illegible] | | You acknowledge that the equipment has been received, has been put in use, is in good working order and is satisfactory and acceptable. | | Nissan Motor Acceptance Corporation | |
| Signature: [signature] | Date: 2-17-12 | Signature: [signature] | Date: 2-17-12 | Signature: [signature] | Date: 8/1/12 |
| Print Name & Title: Alberto Echeverria, VP of OP | | Print Name & Title: Alberto Echeverria, VP of OP | | Print Name & Title: Kevin Williams | |

[signature] Supervisor

[signature]
Jul 16, 2012

NISSAN FORKLIFT

INVOICE
Nissan Forklift Corporation, North America
240 N. Prospect Street ▪ Marengo, IL 60152-3298
Remit To: P.O. Box 70700 ▪ Chicago, IL 60673-0700
Billing Inquiries (815) 568-0061

| Invoice Number |
| --- |
| IN 02139009 |
| NFC Order No. |
| B31463-00 |

Sold To:
03497T
OGDEN FORKLIFTS, LLC.
700 WHARTON DRIVE

ATLANTA GA 30336
USA

Ship To:
03497T
OGDEN FORKLIFTS, LLC.
700 WHARTON DRIVE

ATLANTA GA 30336
USA

| Invoice Date | Customer Order Number | Payment Terms |
| --- | --- | --- |
| 7/11/12 | 102638 | SOLD/DUE ON RECEIPT |
| **Ship Date** | **Ship Via** | **Shipment Terms** |
| 7/11/12 | BEST WAY | PREPAID |

| Model or Part # | Description | Quantity | Unit Price | Extended AMT |
| --- | --- | --- | --- | --- |
| G1N1L20V | TX40 | 1.000 | 19860.000 | 19860. |

SERIAL NUMBER: G1N1-724601
LOT NUM 724601 CHASSIS SERIAL G1N1-724601 4076
MAST SERIAL 25004

| PRICE DESCRIPTION | PRICE DETAIL |
| --- | --- |
| BASE PRICE OF CHASSIS | 30290. |

| OPTION | OPTION VALUE | VALUE DESCRIPTION | PRICE DETAIL |
| --- | --- | --- | --- |
| Regular Discount Program | STD40 | STANDARD DISCOUNT | 40. |
| Price Revision | PR212 | EFFECTIVE FEB 2012 | |
| SSA # | STANDARD | | 10. |
| Mast Type | 3F550 | TRIPLEX 217" | 7330. |
| Fork Selection | 42005 | 42" STANDARD | 505. |
| Tire Selection | TIR00 | STD CUSHION | . |
| Voltage | 36 | 36 VOLTS | . |
| Internal Hosing | SINGLE | SINGLE IHR | 690. |
| Side Shifter | S/S01 | HOOK-ON MOUNT | 905. |
| Overhead Guard | OHGG | STD OHG 83.4" | . |
| Language | PLAP | | |

FREIGHT HANDLING/SHIPPING CHARGE 487.

TOTAL NET SALE USD 20347.0

PAYMENT DUE BY 7/13/12 TOTAL NET AMOUNT USD 20347.0

A Finance Charge will be imposed by use of a periodic rate of one and one-half percent (1 1/2 %) per month which is an annual percentage rate of eighteen percent (18%), on balances over thirty (30) days old.

Original